UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES COUNCIL 4; CONNECTICUT POLICE AND FIRE UNION; NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, Inc.; and CSEA SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 2001, <br><br>*Plaintiffs*, <br><br>v. <br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; and UNITED STATES DEPARTMENT OF JUSTICE, <br><br>*Defendants*. | Civil Action No.: 3:21-cv-01524 <br><br>November 15, 2021 |

## COMPLAINT

1. The state of Connecticut has long relied on the Connecticut National Guard to protect the safety and security of its citizens, and that of the nation. In its modern form, members of the Guard transition between federal and state roles. When activated to federal status, Guard members perform regular duties in the armed forces, including deployment in combat roles. When on state active duty, Guard members supplement civilian state employees in responding to natural disasters, public health crises, labor shortages, and other emergent state needs.

2. While serving under the command of the Governor and pursuant to state law, Guard members work alongside other state and local employees. Yet unlike firefighters, healthcare workers, law enforcement, emergency medical technicians, and other state and local employees,

1

members of the Connecticut National Guard have no labor organization that can represent them or advocate for their interests when in state status.

3. Section 976 of Title 10 of the U.S. Code makes it a felony for members of the armed forces—including members of the National Guard when activated to *federal* status—to join or attempt to form a labor organization. The same federal statute makes it a felony for unions such as Plaintiffs to support labor organizing in the armed forces, including by Guard members when activated to federal status.

4. The plain language of this federal criminal statute, confirmed by its legislative history, does not apply to members of the National Guard when they are mobilized by state governors under state law.

5. However, the statute's serious criminal penalties—combined with the lack of historical and legal precedent confirming that a Guard member in state service who joins or forms a labor organization will not be subjected to federal prosecution—has chilled the speech and associational activity of Guard members in state service, and of unions that they might otherwise seek to join.

6. Section 976 also threatens to invade the power of the Governor of Connecticut to direct state employees, including members of the National Guard on state orders, and of the state legislature to regulate the terms and conditions of state employment.

7. Plaintiffs are Connecticut unions who wish to speak to members of the Connecticut National Guard solely for the purpose of organizing Guard members serving on state duty and, if recognized, bargaining with the state on their behalf.

8. Plaintiffs do ***not*** wish to engage in any conduct that would invite federal criminal liability. They therefore bring this pre-enforcement declaratory judgment action to clarify that the

federal statute, 10 U.S.C. § 976, does not apply to efforts by Guard members or Plaintiff unions to organize members of the National Guard performing state duties under the supervision and control of the Governor. A contrary interpretation would violate the text and history of the statute, as well as the First and Tenth Amendments.

9. Plaintiffs request that this Court enter a declaratory judgment confirming that 10 U.S.C. § 976 does not apply to labor organizing involving members of the Connecticut National Guard when serving on state active duty. In the alternative, Plaintiffs seek an order enjoining enforcement of the federal statute against labor organizing activity regarding Guard members on state active duty as violative of the First and Tenth Amendments.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331. The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

11. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1)(C) because the events giving rise to Plaintiffs' claim are occurring in the District of Connecticut. Defendant Merrick Garland is sued in his official capacity as an officer of the United States.

## PARTIES

12. Plaintiff AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES COUNCIL 4 ("AFSCME Council 4") is a union that represents over 30,000 workers across Connecticut and continues to actively organize state employees. AFSCME Council 4 membership includes individuals who serve as nurses, corrections officers, and sanitation workers, among other professions.

13. Plaintiff CONNECTICUT POLICE AND FIRE UNION ("CPFU") is a labor agency representing nearly 1,000 police, fire, and public safety officials in more than 13 state

agencies across Connecticut. CPFU members protect state property and enforce state laws. Many of its members are also members of the Connecticut National Guard.

14. Plaintiff NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, Inc. ("NAGE") is a labor union that represents more than 100,000 federal, state, municipal and private sector employees throughout the country. NAGE represents approximately 2,500 bargaining unit employees in Connecticut including the judicial marshals. Several of its members are also members of the Connecticut National Guard. NAGE is committed to organizing for economic security, dignity, and respect for the all employees it represents.

15. Plaintiff CIVIL SERVICE EMPLOYEES AFFILIATES SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 2001 ("SEIU Local 2001") is one of the largest unions of Connecticut state employees and represents over 22,000 active and retired public service employees. SEIU Local 2001 began advocating for Connecticut state employees in 1941 and continues to actively organize and represent these employees today, including by representing state employees in the fields of public safety, criminal justice, corrections, and education. SEIU Local 2001 also works to provide Connecticut's working families living wages, pensions, and opportunities for advancement.

16. Defendant MERRICK GARLAND is sued in his official capacity as Attorney General of the United States. Attorney General Garland is responsible for prosecuting violations of 10 U.S.C. § 976.

17. Defendant UNITED STATES DEPARTMENT OF JUSTICE is responsible for prosecuting violations of 10 U.S.C. § 976.

## STATEMENT OF FACTS

### The Connecticut National Guard

18. Organizationally, the Connecticut National Guard falls under the Connecticut Military Department. Connecticut's Military Department traces its roots to pre-Founding Era militias dating back to 1637.

19. In 1939, the Connecticut General Assembly established the Connecticut Military Department, a state agency led by a cabinet official, the Adjutant General. What began as the military arm of the colony of Connecticut evolved over time into a nimble and adaptable force that trains for and performs federal military service—including deployments abroad—as well as a wide range of roles within Connecticut to supplement the state's civilian workforces.

20. The Connecticut National Guard has long played a central role in the state's response to domestic crises.

21. As early as 1955, for instance, the Connecticut Military Department had an Office of Civil Defense that coordinated the National Guard response to state emergencies.

22. Today, the Connecticut National Guard consists of over 4,500 members and maintains a presence in 35 locations across the state.

23. The Connecticut National Guard is a separate entity from the Connecticut State Guard. The Connecticut State Guard is a volunteer militia that cannot be federalized and consists of the Governor's Guards and other volunteers who donate their time and talents to the service of the state.

24. While a minority of the Connecticut National Guard are full-time soldiers, most Guard members are "citizen-soldiers," who work civilian jobs, attend school, and raise families in

the civilian world when not performing Guard duty. That duty typically consists of one weekend of training every month, and one additional two-week training period every year.

25. In addition to routine training, Guard members can be called upon by the federal government or the State of Connecticut to fulfill a variety of roles in a variety of different activation statuses.

26. When activated, members of the Connecticut National Guard are in one of three duty statuses depending on the statutory authority used to call them to duty. These statuses are known as "Title 10," "Title 32," and "state active duty."

27. In each status, they can be activated on short notice to serve their state and country, often leaving behind their civilian careers and families with little notice or time to prepare.

28. **Title 10:** When activated on "Title 10 orders," pursuant to various provisions of Title 10 of the U.S. Code, Guard members are active-duty federal troops subject to federal control by the President of the United States as Commander-in-Chief.

29. Guard members in this status typically participate in military operations overseas, and are entitled to the same pay, benefits, and legal protections as other active military members. The pay and benefits for Guard members on Title 10 orders are provided by the federal government.

30. Plaintiff unions do not seek a declaratory judgment regarding organizing Guard members on Title 10 orders.

31. **Title 32:** When activated on "Title 32 orders," pursuant to various provisions of Title 32 of the U.S. Code, Guard members are nominally subject to state authority through the Governor of Connecticut as Commander-in-Chief but are controlled operationally by the federal government.

32. While on Title 32 orders, Guard members typically engage in annual training or domestic emergency response. These activities are funded by the federal government, which considers Guard members on Title 32 orders to be on federal full-time duty, and so provides Guard members with their pay and benefits.

33. Plaintiff unions do not seek a declaratory judgment regarding organizing Guard members on Title 32 orders.

34. **State active duty:** Members of the Connecticut National Guard may also be activated solely under the command of the Governor of Connecticut through authority granted by the laws of Connecticut. *See* Conn. Gen. Stat. § 27-16.

35. In this status, known as "state active duty," members of the Connecticut National Guard are state employees whose pay and benefits are determined by state law.

36. Members of the Connecticut National Guard on state active duty are not subject to federal control. They are compensated from state funds, and they are subject only to the Governor's control.

37. Plaintiff unions seek a declaratory judgment regarding organizing Guard members on state active-duty orders only.

38. Members of the Connectional National Guard do not deploy overseas or engage in combat missions while on state active duty.

39. The Posse Comitatus Act, 18 U.S.C § 1385, does not apply to Guard members on state active duty.

40. When activated on state orders pursuant to Conn. Gen. Stat. § 27-16, members of the Connecticut National Guard engage in a wide range of activities alongside other state employees.

41. For example, members of the Connecticut National Guard have a long history of responding to natural disasters in the state of Connecticut, such as the Hurricane of 1938, the Flood of 1955, the Blizzard of 1978, and Hurricane Sandy in 2012.

42. Recently, members of the Connecticut National Guard on state active duty cleared trees and restored electrical power after Tropical Storm Isaias in August 2020.

43. Guard members also deployed on state active duty in response to Tropical Storm Henri in August 2021. More than 200 members of the Guard readied to conduct search and rescue, emergency power generation, commodities distribution, and route clearance operations.

44. In all these activities, members of the Connecticut National Guard worked alongside and supplemented the work done by state emergency personnel and other state and local employees.

45. Members of the Connecticut National Guard on state active duty have also played an active part in Connecticut's response to the COVID-19 pandemic. For example, members of the Guard have distributed vaccines and established a field hospital alongside state and private healthcare workers.

46. Connecticut Governor Ned Lamont acknowledged the indispensable role of the Guard in the state's pandemic response in August 2021, stating that Connecticut "needed [them] desperately over the last year and a half and [they] stepped up every day."

47. Members of the Connecticut National Guard on state active duty also work with Connecticut public safety employees in other capacities. In recent years, members of the Guard have supplemented police responses to protests, joined other state employees in protecting state property, and trained for helicopter wildfire firefighting.

48. The state of Connecticut has also used or prepared to use Guard members on state active duty to address potential labor shortages among specific state workforces.

49. For instance, when healthcare professionals in SEIU 1199-NE neared a strike deadline in Connecticut in spring 2021, the state of Connecticut authorized the Connecticut National Guard to staff nursing homes if necessary.

50. Similarly, in fall 2021, the state of Connecticut explored using the National Guard to supplement the state workforce in the event employees did not comply with an executive order mandating COVID-19 vaccination or weekly testing.

51. Also in fall 2021, media reported that the state of Connecticut was considering activating the National Guard to drive school buses, as Massachusetts did in September 2021.

52. The work that members of the Connecticut National Guard engage in while on state active duty—such as responding to disasters, assisting in COVID-19 response, supplementing the state workforce, and protecting the public—is done alongside other state and local employees.

53. With few exceptions, state employees can join a labor organization under Connecticut's public employee labor law.

54. The Connecticut General Assembly has enacted a comprehensive statutory scheme governing public employee labor relations. Specifically, within the Connecticut General Statutes, sections 5-270 through 5-280 guarantee to state employees the right of self-organization and the right to bargain collectively. This statutory scheme facilitates representation and collective bargaining but prohibits strikes by public employees. It also designates some subjects of bargaining as mandatory and others as nonmandatory.

55. The General Assembly has amended Connecticut statutes governing public employee labor relations many times, and it retains the power to do so in the future.

56. Unlike most other state employees, there is currently no labor organization that can represent the interests of Guard members to the Connecticut Military Department, the state agency that is their employer while they are on state active duty.

57. The Connecticut General Assembly has regulated the employment of Guard members on state active duty in various additional ways. For instance, the legislature has provided that Connecticut National Guard members on state active duty are exempt from the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-58(e), but that they are covered by the Workers' Compensation Act, Conn. Gen. Stat. § 27-67(a).

### 10 U.S.C. § 976

58. Congress enacted the federal statute criminalizing union organizing in the armed forces in 1978, in response to an exploratory effort to organize federal forces by members of the Vietnam War generation and a federal employee union.

59. The statute, by its terms and consistent with its legislative history and canons of construction, does not apply to members of the National Guard on state active duty. Nevertheless, fear of prosecution has chilled protected speech and associational activity by Plaintiffs, and by members of the Connecticut National Guard on state active duty whom Plaintiffs seek to represent.

60. Section 976 states that a "member of the armed forces" may not "join or maintain membership in" a labor organization, nor may they "attempt to enroll" another member in a labor organization. 10 U.S.C. § 976(b)(1), (2).

61. Section 976 also states that no "person" may (1) "enroll . . . any member of the armed forces" in a labor organization or "solicit or accept dues or fees for such an organization from any member of the armed forces" or (2) "negotiate or bargain, or attempt through any

coercive act to negotiate or bargain . . . on behalf of members of the armed forces, concerning the terms or conditions of service of such members." *Id.* § 976(c)(1), (2).

62. Section 976 defines "member of the armed forces" to include three groups of service members:

(A) "a member of the armed forces who is serving on active duty";

(B) "a member of the National Guard who is serving on full-time National Guard duty"; or

(C) "a member of a Reserve component while performing inactive-duty training."

*Id.* § 976(a)(1).

63. None of these groups includes Guard members on state active duty.

64. The first group consists of those on active duty in the federal armed forces. *See* 10 U.S.C. § 101(a)(4) (defining "armed forces" to mean the "Army, Navy, Air Force, Marine Corps, Space Force, and Coast Guard"); *id.* § 101(d)(1) (defining "active duty" to mean "full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. Such term does not include full-time National Guard duty"). This includes Guard members on "Title 10 orders."

65. The second group, those on "full-time National Guard duty," is defined as those engaged in "training or other duty" performed under a listed section of Title 32 and for which a Guard member is "entitled to pay from the United States or for which the member has waived pay from the United States." *Id.* § 101(d)(5). This includes Guard members on Title 32 orders.

66. The third group are those on "inactive duty training." This includes Guard members engaged in training and other duties directed by the Secretary of the Army or the Secretary of the Air Force. *Id.* § 101(d)(7).

11

67. Guard members on state active duty are not on "full-time National Guard duty" for the purposes of Section 976 of Title 10, as that term is defined in the plain language of the statute. They are not entitled to pay from the United States, and so cannot waive it.

68. Nor are Guard members on state active duty engaged in "inactive duty training," as that term is defined in the plain language of the statute.

69. By its terms, Section 976 does not apply to Guard members on state active duty.

70. The legislative history of Section 976 confirms that the statute was not intended to apply to Guard members on state active duty. The House Armed Services Committee explained that, "since the restriction on their union membership affects First Amendment rights, the committee believes that the restriction should be drawn as narrowly as possible." H.R. Rep. No. 95-894(I), at 8-9 (1978).

71. Section 976, however, chills members of the Guard on state active duty from engaging in any of the activities described in § 976(b) and (c), including joining or attempting to enroll another in a labor organization, because Guard members who do so could be criminally prosecuted.

72. Section 976 also chills the everyday activities of Plaintiffs and other civilians and labor organizations, preventing them from organizing and enrolling members of the Connecticut National Guard who are not activated or on state active duty.

73. To be clear, Plaintiffs do *not* seek to enroll or represent members of the Connecticut National Guard when in federal status, whether on Title 10 or Title 32 orders or on inactive-duty training. Nor do Plaintiffs seek in any way to bargain with federal officials regarding the terms and conditions of employment of members of the Connecticut National Guard in federal status.

74. Rather, Plaintiffs wish to enroll members of the Connecticut National Guard on state active duty in a labor organization and to represent them in that status, including bargaining and negotiating with state officials as to the terms and conditions of their employment on state active duty.

75. While state active duty constitutes only one of three duty statuses, there is no practical barrier to Connecticut Guard members bargaining over state active duty conditions alone. In fact, many Guard members already do engage in collective bargaining over limited elements of their work.

76. For example, "dual status military technicians" are a category of federal civilian employees who support the Guard and who are required to maintain National Guard membership. Guard members who concurrently serve as Guard technicians have formed and joined unions in their civilian status and collectively bargain over the terms of their technician duties.

77. Moreover, many members of the Connecticut National Guard already belong to the Plaintiff unions, or to other unions, in their capacity as civilian workers.

78. In this pre-enforcement declaratory judgment action, Plaintiffs seek to end the chilling of their constitutionally protected speech and associational activities by confirming that 10 U.S.C. § 976 does not prevent Plaintiffs from engaging in these lawful activities. In the alternative, if the statute must be interpreted otherwise, Plaintiffs seek to enjoin the federal statute as applied to Guard members on state active duty and those who would seek to enroll them in a labor organization or represent their interests in bargaining or negotiation.

## **FIRST CLAIM FOR RELIEF**

Declaratory Judgment Confirming Scope of 10 U.S.C. § 976

79. Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80. There exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that 10 U.S.C. § 976 does not apply to: (1) members of the Connecticut National Guard who are on state active duty; and, (2) any labor organizations or other civilian actors that attempt to organize, enroll, represent, or negotiate on behalf of members of the Connecticut National Guard who are not activated or who are on state active duty.

81. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights and liabilities regarding the enforceability of 10 U.S.C. § 976 against people and organizations who have an immediate interest in activity protected by the First Amendment: organizing members of the Connecticut National Guard who are not activated or who are on state active duty as to state active duty matters.

82. Plaintiffs are entitled to a declaratory judgment that 10 U.S.C. § 976 does not apply to members of the Connecticut National Guard who are not activated or who are on state active duty and labor organizations that attempt to organize and represent them.

83. A declaratory judgment will clarify the coverage of 10 U.S.C. § 976 and settle the legal controversy between Plaintiffs and Defendants by providing relief from uncertainty.

84. It will comport with the canon of lenity, which holds that one should construe ambiguity in a criminal statute narrowly, by interpreting 10 U.S.C. § 976 to avoid imposing federal criminal penalties on members of the Connecticut National Guard who are not activated or who are on state active duty and labor organizations that attempt to organize and represent them.

85. It will also reduce friction between two sovereign legal systems, because a contrary interpretation of 10 U.S.C. § 976 intrudes on the state of Connecticut's authority to regulate its own state employees and militia in violation of the Tenth Amendment.

86. A declaratory judgment is the most effective remedy in this case, as the only other way to settle the legal controversy over the meaning of 10 U.S.C. § 976 would be for Plaintiffs or members of the Guard to engage in organizing activity and then be criminally prosecuted by Plaintiffs.

## **SECOND CLAIM FOR RELIEF**

### Violation of the First Amendment

87. Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

88. In the alternative, 10 U.S.C. § 976 violates the First Amendment as applied to Guard members on state active duty and those who seek to enroll them in a labor organization or represent them in bargaining and negotiations.

89. Under the First Amendment, Plaintiffs have a constitutional right to speak with Guard members on state active duty about the possibility of unionization, inform these Guard members about the advantages of union membership, and represent them in bargaining and negotiations if authorized. *See Thomas v. Collins*, 323 U.S. 516, 532 (1945).

90. However, 10 U.S.C. § 976 has chilled Plaintiffs from engaging in these conversations for fear of criminal prosecution.

91. A statute that chills constitutionally protected speech or association violates the First Amendment. When such chilling occurs, it is appropriate for a court to provide a limiting

construction of the statute that clarifies that the statute does not infringe on constitutionally protected speech or association.

92. Section 976 chills Plaintiffs otherwise constitutionally protected speech and association in violation of the First Amendment. It is therefore appropriate for this Court to grant declaratory relief clarifying that 10 U.S.C. § 976 does not apply to members of the Connecticut National Guard when not activated or serving on state active duty.

93. Further, prosecution under 10 U.S.C. § 976 for speaking with members of the Connecticut National Guard on state active duty about the possibility of collective bargaining, or for organizing or representing members of the Connecticut National Guard, impermissibly violates Plaintiffs' ability to engage in protected First Amendment activity.

94. Prosecution under 10 U.S.C. § 976 for seeking to enroll members of the Connecticut National Guard on state active duty in a labor organization, or to represent them in bargaining and negotiations, impermissibly burdens Plaintiffs' speech and association on the basis of its content and viewpoint, in violation of the First Amendment.

95. Finally, 10 U.S.C. § 976 is overinclusive and substantially overbroad because it prohibits Plaintiffs from speaking with members of the Connecticut National Guard on state active duty about the possibility of collective bargaining, or for organizing or representing members of the Connecticut National Guard.

### THIRD CLAIM FOR RELIEF

Violation of the Tenth Amendment

96. Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

97. In the further alternative, the federal government's imposition of limits on the right of National Guard members to engage in concerted labor activity while on state active duty by enacting 10 U.S.C. § 976 violates the Tenth Amendment.

98. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

99. The regulation of the terms and conditions of state employment, including the collective bargaining rights of state employees, is a core local government function historically reserved to the states.

100. In criminalizing certain activities by National Guard members on state active duty, 10 U.S.C. § 976 grants the federal government powers not expressly reserved to it by the Constitution.

101. Simultaneously, it strips the State of Connecticut of its authority over state employees. "Federal legislation threatening to trench on the States' arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State's chosen disposition of its own power." *Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004).

102. The Constitution imbues both the federal executive and legislative branch with authority over the National Guard only during those times in which the Guard are serving in a federally activated duty status. *See* U.S. Const., Art. I, sec. 8, cl. 16 (granting Congress the authority "[t]o provide for organizing, arming, and disciplining, the [National Guard], and for governing such part of them as may be employed *in the Service of the United States,* but *reserving to the States* respectively . . . the Authority of training the Militia according to the discipline prescribed by Congress" (emphasis added)); *Id.*, Art. II, sec. 2, cl. 1 (providing that "[t]he President

shall be Commander in Chief of [the National Guard]" when the Guard is "called *into the actual Service of the United States*" (emphasis added)). Congress may also call forth the National Guard "to execute the Laws of the Union, suppress Insurrections and repel Invasions." *Id.*, Art. I, sec. 8 cl. 15.

103.   Article I and Article II of the U.S. Constitution limit federal control over the National Guard to the periods in which Guard members are in federally activated duty status—in effect, when they are serving on either Title 10 or Title 32 orders. As such, the responsibility for establishing disciplinary standards for the National Guard while on state active duty falls to the states themselves.

104.   States have long dictated the rights of their own employees to engage in collective bargaining. To that end, the state of Connecticut has enacted an extensive regulatory scheme regarding the rights of state employees to collectively bargain. *See* Conn. Gen. Stat. §§ 5-270 – 5-280. The existence of such legislation clearly indicates that the field of collective bargaining is heavily regulated by the state.

105.   In addition to legislating the rights of state employees to collectively bargain, Connecticut has also regulated the terms and conditions of employment of Guard members on state activity. Examples include exempting them from the Connecticut Minimum Wage Act and including them in the Connecticut Workers' Compensation Act. *See* Conn. Gen. Stat. §§ 31-58(e), 31-275(1)(G)(9)(vii).

106.   However, the State of Connecticut has established no statutes criminalizing organizing analogous to 10 U.S.C. § 976.

107.   In preventing National Guard members on state active duty from engaging in concerted labor activity, 10 U.S.C. § 976 thus violates the balance of powers required by the

Constitution and represents a federal incursion into an area of state governance historically reserved to the states.

108.   Further, prosecution under 10 U.S.C. § 976 for speaking with members of the Connecticut National Guard on state active duty about the possibility of collective bargaining, or for organizing or representing members of the Connecticut National Guard, would usurp the "residual power left to the states" by intentionally interfering with the state of Connecticut's prerogative to manage the rights of its employees.

109.   By acting to frustrate core state government functions, federal officials would be in violation of the Tenth Amendment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Grant Plaintiffs declaratory relief by confirming that 10 U.S.C. § 976 does not apply to members of the Connecticut National Guard when not activated or when serving on state active duty;

(2) In the alternative, declare that Section 976 violates the First and Tenth Amendment as applied to any efforts of Plaintiffs to enroll members of the Connecticut National Guard on state active duty in a labor organization or to negotiate or bargain on their behalf with state officials;

(3) In the further alternative, enjoin application of Section 976 to any efforts of Plaintiffs to enroll members of the Connecticut National Guard on state active duty in a labor organization or to negotiate or bargain on their behalf with state officials, as violative of the First and Tenth Amendments;

(4) Award attorney's fees and costs to Plaintiffs; and

(5) Order such other and further relief as this Court may deem appropriate.

Dated: November 15, 2021

Respectfully submitted,

By: /s/ Michael J. Wishnie
Joshua Britt, Law Student Intern
Grace Judge, Law Student Intern
Rekha Kennedy, Law Student Intern
Josh Lefkow, Law Student Intern
Meghan E. Brooks, ct31147
Michael J. Wishnie, ct27221
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

Daniel E. Livingston
Livingston, Adler, Pulda,
Meiklejohn & Kelly, PC
557 Prospect Ave.
Hartford, CT 06105
Tel: (860) 454-9608
delivingstonlapm@gmail.com