**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES COUNCIL 4; CONNECTICUT POLICE AND FIRE UNION; NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, Inc.; and CSEA SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 2001, | ) ) ) ) ) ) ) ) )   No. 3:21-cv-01524 |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| MERRICK GARLAND, in his official capacity as Attorney General of the United States; and UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) ) |
| *Defendants*. | ) ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 3

I.    The National Guard ............................................................................................... 3

II.   Statutory Background: 10 U.S.C. § 976 ............................................................... 4

III.  The Complaint ....................................................................................................... 6

STANDARD OF REVIEW ............................................................................................... 8

ARGUMENT .................................................................................................................... 9

I.    This Court Lacks Jurisdiction Over Plaintiffs' First and Tenth Amendment Claims. ........... 9

   A.   Plaintiffs Lack Standing to Assert a First Amendment Claim Because They Lack an
   Injury in Fact and Because They Cannot Assert the Rights of Third-Party Guard Members. ... 9

      1.   Plaintiffs Lack an Injury In Fact Because § 976 Does Not Proscribe Their Alleged
      Intended Conduct and They Fail to Assert a Credible Risk of Prosecution. ........................10

      2.   Plaintiffs Lack Third-Party Standing to Assert the Rights of Guard Members on State
      Active Duty and in the Inactive National Guard Because They Do Not Allege a Close
      Relationship with Such Guard Members, or a Barrier to Such Guard Members' Ability to
      Assert Their Own Rights, or Any Injury to Themselves. ...................................................15

   B.   Plaintiffs Lack Standing to Assert a Tenth Amendment Claim Because They Lack an
   Injury in Fact. ..................................................................................................................17

   C.   Plaintiffs' First and Tenth Amendment Claims Are Unripe Because Plaintiffs Cannot
   Show That the Alleged Harm Will Ever Occur. ...................................................................18

II.   Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted. ....................20

   A.   Plaintiffs' DJA Claim Fails to State a Claim Because the DJA Does Not Create a Cause
   of Action. ........................................................................................................................20

   B.   Plaintiffs' First Amendment Claim Fails to State a Claim Because § 976 Does Not
   Apply to Plaintiffs' Alleged Intended Conduct. ...................................................................20

C.      Plaintiffs' Tenth Amendment Claim Similarly Fails to State a Claim Because § 976 Does Not Apply to Plaintiffs' Alleged Intended Conduct....................................................21

CONCLUSION.................................................................................................................21

## Table of Authorities

Cases

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ...................................................................................................19

*Allen v. Wright*,
   468 U.S. 737 (1984) ...................................................................................................17

*Am. Charities for Reasonable Fundraising Regul., Inc. v. Shiffrin*,
   205 F.3d 1321 (2d Cir. 2000) ....................................................................................13

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016) ........................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................................8

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
   426 F.3d 635 (2d Cir. 2005) ........................................................................................8

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ............................................................................................passim

*Barrows v. Jackson*,
   346 U.S. 249 (1953) ...................................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .....................................................................................................8

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986) .....................................................................................................8

*Bond v. United States*,
   564 U.S. 211 (2011) ...................................................................................................17

*Carney v. Adams*,
   141 S. Ct. 493 (2020) .................................................................................................14

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012) ......................................................................................20

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................................9, 14

*Clark v. Stone,*
   998 F.3d 287 (6th Cir. 2021) ...................................................................................12

*Colombo v. O'Connell,*
   310 F.3d 115 (2d Cir. 2002) ...................................................................................20

*Doe v. Bolton,*
   410 U.S. 179 (1973) ...............................................................................................16

*F.X. Maltz, Ltd. v. Morgenthau,*
   556 F.2d 123 (2d Cir. 1977) ...................................................................................14

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft,*
   185 F. Supp. 2d 9 (D.D.C. 2001) ............................................................................ 8

*Griswold v. Connecticut,*
   381 U.S. 479 (1965) ...............................................................................................16

*Hedges v. Obama,*
   724 F.3d 170 (2d Cir. 2013) ...................................................................................16

*Isaacs v. Bowen,*
   865 F.2d 468 (2d Cir. 1989) ...................................................................................19

*Keepers, Inc. v. City of Milford,*
   807 F.3d 24 (2d Cir. 2015) .....................................................................................15

*Knife Rights, Inc. v. Vance,*
   802 F.3d 377 (2d Cir. 2015) .............................................................................10, 14

*Kowalski v. Tesmer,*
   543 U.S. 125 (2004) .........................................................................................15, 16

*Laird v. Tatum,*
   408 U.S. 1 (1972) .......................................................................................11, 12, 21

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................passim

*Miss. State Democratic Party v. Barbour,*
   529 F.3d 538 (5th Cir. 2008) ..................................................................................13

*Murphy v. Lamont,*
   No. 3:20-CV-0694 (JCH), 2020 WL 4435167 (D. Conn. Aug. 3, 2020) .................12

*N.Y. State Citizens' Coal. for Child. v. Poole*,
  922 F.3d 69 (2d Cir. 2019) ................................................................................2, 15

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) ...............................................................2, 12, 18, 19

*Ollie v. Univ. of Conn.*,
  364 F. Supp. 3d 143 (D. Conn. 2019)...........................................................17

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)..........................................................................................12

*Perpich v. Dep't of Def.*,
  496 U.S. 334 (1990) .......................................................................................3, 7

*Rajamin v. Deutsche Bank Nat. Trust Co.*,
  757 F.3d 79 (2d Cir. 2014) ...............................................................................15

*Renne v. Geary*,
  501 U.S. 312 (1991) ...........................................................................................8

*Simmonds v. I.N.S.*,
  326 F.3d 351 (2d Cir. 2003) ...............................................................2, 18, 19

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007)............................................................................................8

*Spear v. Town of W. Hartford*,
  954 F.2d 63 (2d Cir. 1992) ................................................................................21

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008)..........................................................................................15

*Stagg, P.C. v. U.S. Dep't of State*,
  983 F.3d 589 (2d Cir. 2020) .......................................................................10, 12

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)...............................................................................................8

*Susan B. Anthony List v. Driehaus*,
  ("*SBA*"), 573 U.S. 149 (2014)....................................................................passim

*Texas v. United States*,
  523 U.S. 296 (1998)...............................................................................9, 18, 19

*Thomas v. Anchorage Equal Rights Comm'n,*
  220 F.3d 1134 (9th Cir. 2000) ...........................................................13

*Thomas v. Collins,*
  323 U.S. 516 (1945) ..........................................................................11

*Thomas v. Union Carbide Agric. Prods. Co.,*
  473 U.S. 568 (1985) ..........................................................................18

*Tirado-Acosta v. Puerto Rico Nat'l Guard,*
  118 F.3d 852 (1st Cir. 1997) ............................................................... 3

*United States v. Chester,*
  628 F.3d 673 (4th Cir. 2010) .............................................................18

*United States v. Smith,*
  945 F.3d 729 (2d Cir. 2019) ..............................................................16

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982) ........................................................................... 9

*Vt. Right to Life Comm., Inc. v. Sorrell,*
  221 F.3d 376 (2d Cir. 2000) ..............................................................10

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,*
  549 F.3d 100 (2d Cir. 2008) ..............................................................15

*Warth v. Seldin,*
  422 U.S. 490 (1975) .......................................................................2, 16

*White v. United States,*
  601 F.3d 545 (6th Cir. 2010) .............................................................12

*Younger v. Harris,*
  401 U.S 37 (1971) ....................................................................2, 14, 19

Statutes

10 U.S.C. § 976 ....................................................................... ii, 1, 4, 5

10 U.S.C. § 7062(c)(1) ........................................................................ 3

10 U.S.C. § 10141 ............................................................................... 6

28 U.S.C. § 2201 ..........................................................................7, 20

Connecticut General Statute § 27-16 ........................................................................... 4

U.S. Const. art. III ...................................................................................................... 1

## INTRODUCTION

Plaintiffs ask this Court to issue an advisory opinion on a statute over which there is no actual legal disagreement. Specifically, plaintiffs—a group of Connecticut unions—bring suit to confirm their uncontested interpretation of 10 U.S.C. § 976. Section 976 imposes criminal prohibitions on "members of the armed forces" who unionize and "any person" who unionizes a "member[] of the armed forces." 10 U.S.C. § 976(b)–(c). Section 976 defines "members of the armed forces" as exclusively including "(A) a member of the armed forces who is serving on active duty, (B) a member of the National Guard who is serving on full-time National Guard duty, or (C) a member of a Reserve component while performing inactive-duty training." *Id.* § 976(a)(1).

Plaintiffs seek a declaration that "members of the armed forces" does not include members of the Connecticut National Guard on state active duty or in the Inactive National Guard. But by its own terms, § 976 does not apply to Guard members on state active duty or in the Inactive National Guard. Indeed, at no point in the history of § 976 has any government entity ever interpreted the statute as such. Plaintiffs' suit is thus a not a case or controversy within the meaning of Article III of the United States Constitution. U.S. Const. art. III. § 2.

Plaintiffs bring two claims under the First and Tenth Amendments of the United States Constitution, respectively. Both fail for lack of jurisdiction. The crux of plaintiffs' First Amendment claim is that even though § 976 does not apply to Guard members on state active duty or in the Inactive National Guard, § 976 nevertheless chills the speech and associational activities of both plaintiffs and Guard members. But plaintiffs fail to show an injury in fact to support standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs do not assert an intention to engage in a course of conduct proscribed by § 976 and cannot establish a credible threat of prosecution thereunder. *See Susan B. Anthony List v. Driehaus* ("*SBA*"), 573 U.S. 149,

151 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt,* 442 U.S. at 298–99 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

Plaintiffs also lack third-party standing to assert a First Amendment claim on behalf of Guard members. Plaintiffs do not plead any close relationship with Guard members; do not plead that Guard members are unable to effectuate their own rights; and do not plead that enforcement of § 976 against themselves would result in a violation of Guard members' rights, given that there is no likelihood that § 976 would be enforced against plaintiffs for their alleged intended conduct. *See N.Y. State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019); *Warth v. Seldin*, 422 U.S. 490, 510 (1975).

Plaintiffs' Tenth Amendment claim alleges that if § 976 applies to Guard members on state active duty, § 976 violates the Tenth Amendment by encroaching on Connecticut's authority over state employees. But, again, because § 976 does not apply to such Guard members, plaintiffs have failed to establish an injury and so lack standing.

Finally, plaintiffs' First and Tenth Amendment claims are both unripe because plaintiffs cannot show that harm will ever occur. Plaintiffs cannot show constitutional ripeness, given their lack of injury in fact. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). Nor can plaintiffs show prudential ripeness, given that plaintiffs cannot show that prosecution is ever likely to happen. *See Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003).

Even if this Court were to find it has jurisdiction, plaintiffs fail to state a claim upon which relief can be granted for largely the same reasons. To the extent that plaintiffs' claims are premised

on the theory that § 976 applies to Guard members on state active duty or in the Inactive National Guard, such claims necessarily fail because § 976 does not so apply. To the extent that plaintiffs' First Amendment claim is premised on § 976's alleged chilling effect, plaintiffs allege only a speculative, conclusory chill.

Because plaintiffs cannot establish either standing or ripeness with regard to either of their constitutional claims, and because they have not stated a viable claim for relief, this Court should dismiss this action with prejudice.

## **BACKGROUND**

### I.     **The National Guard**

The Connecticut National Guard, like all state National Guards, is a uniquely "hybrid" organization in terms of its status within the federal system. *See Tirado-Acosta v. Puerto Rico Nat'l Guard*, 118 F.3d 852, 853 (1st Cir. 1997). An individual who enlists in the Connecticut National Guard simultaneously enlists in the National Guard of the United States. *See Perpich v. Dep't of Def.*, 496 U.S. 334, 345 (1990) (describing the respective state National Guards and the National Guard of the United States as "two overlapping but distinct organizations"). The National Guard of the United States is a reserve component of either the Army or the Air Force; the National Guard of each state is not. *See* 10 U.S.C. § 7062(c)(1) (listing only the Army National Guard of the United States, and not individual state National Guards, as components of the Army); *id.* § 9062(d)(1) (same regarding Air Force). Guard members are state serviceman—not part of the federal military—until they receive express orders directing them into federal service. *See id.*

Guard members may have one of three statuses at any given time: active status, inactive status (either on the inactive list of a Reserve component or in the Inactive National Guard), or retired. *Id.* § 10141(b); *id.* § 101(d)(4). In turn, active-status Guard members may serve in one of

three active statuses at any given time: (1) federal active duty under Title 10; (2) state control with federal authority under Title 32; or (3) state active duty. Title 10 gives the federal government authority to raise and employ military forces, including National Guard units, under federal control and at federal expense for national defense purposes. Title 10 is reserved for limited circumstances, such as federal deployment overseas to fight terrorism. Title 32 authorizes use of the National Guard for federal purpose and at federal expensive but under nominal state control. Under Title 32, Guard members generally engage in domestic emergency response and training. Finally, the Governor of a state may order that state's National Guard into state active duty pursuant to state law at state expense. Thus, under Connecticut General Statute § 27-16, the Connecticut Governor may take exclusive command of the National Guard. Conn. Gen. Stat. § 27-16.

## II.       Statutory Background: 10 U.S.C. § 976

As their federal service requires, Guard members in certain statuses are subject to federal regulations. Section 976 of Title 10 prohibits "members of the armed forces" from joining a "military labor organization" or "attempt[ing] to enroll" another member of the armed forces in a military labor organization. 10 U.S.C. § 976(b). Section 976 also prohibits "any person" from enrolling a member of the armed forces in a military labor organization or negotiating on behalf of members of the armed forces concerning the terms of their service. *Id.* § 976(c). Section 976 defines "members of the armed forces" to include three categories: "(A) a member of the armed forces who is serving on active duty, (B) a member of the National Guard who is serving on full-time National Guard duty, or (C) a member of a Reserve component while performing inactive-duty training." *Id.* § 976(a)(1). None of these categories include Guard members on state active duty or members of the Inactive National Guard.

4

The first group—"member[s] of the armed forces . . . serving on active duty," *id.*—includes members of the Army, Navy, Air Force, Marine Corps, Space Force, and Coast Guard serving on "full-time duty in the active military service of the United States," *id.* § 101(a)(4); *id.* § 101(d)(1) (defining "active duty" to also include "full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned," but excluding "full-time National Guard duty"). This group includes Guard members activated under Title 10, who serve under federal control at federal expense.

The second group—members "serving on full-time National Guard duty," *id.* § 976(a)(1)—includes those engaged in "training or other duty" under a listed section of Title 32, *id.* § 101(d)(5). This group includes Guard members activated under Title 32, who serve for federal purpose and at federal expense but under nominal state control.

The third group—members "of a Reserve component . . . performing inactive-duty training," *id.* § 976(a)(1)—includes those engaged in duties prescribed, or voluntary activities authorized, by the Secretary of the Army or the Secretary of the Air Force, *id.* § 101(d)(7). Inactive-duty training includes the requisite weekend training drills once per month. Guard members in inactive-duty training are paid by the federal government. Notably, members of the Inactive National Guard—as opposed to Guard members on the inactive list of a Reserve component—do not participate in regular training and thus do not perform "inactive-duty training" within the meaning of § 976.

Section 976 thus does not apply to Guard members on state active duty or in the Inactive National Guard. Neither category performs full-time active duty in the military, full-time National

Guard duty, or inactive-duty training. At no point has any government entity ever interpreted § 976 to apply to Guard members on state active duty or in the Inactive National Guard.

## III.    The Complaint

A group of Connecticut unions—including the American Federation of State County and Municipal Employees Council 4, the Connecticut Police and Fire Union,[1] the National Association of Government Employees, Inc., and the Civil Service Employees Affiliates Service Employees International Union Local 2001 (collectively, "plaintiffs")—filed this lawsuit on November 15, 2021 against Merrick Garland, in his official capacity as Attorney General of the United States, and the United States Department of Justice (collectively, the "federal government").

Plaintiffs allege that although § 976 by its own terms does not apply to Guard members on state active duty or in the Inactive National Guard, § 976 has nevertheless chilled the speech and associational activities of both plaintiffs and Guard members.[2] Specifically, plaintiffs allege that they seek to enroll Connecticut Guard members on state active duty or in the Inactive National Guard in a labor organization and to represent them in that status, but that § 976 chills them from doing so. *See* Compl. ¶¶ 72, 74. Similarly, plaintiffs allege that § 976 "chills members of the Guard

---

[1] The Connecticut Police and Fire Union voluntarily dismissed itself from this litigation on January 6, 2022. ECF No. 15.

[2] Plaintiffs' complaint inconsistently references Guard members who are "not activated." *Compare, e.g.*, Compl. ¶¶ 5, 7, 71, 89 (referring only to the chilling effect on, and plaintiffs' desire to speak with, Guard members on state active duty) *with id.* ¶¶ 72, 80, 92 (referring also to Guard members "who are not activated"); *see also* Compl at 19 (requesting the court declare that § 976 does not apply to Guard members on state active duty or in the Inactive National Guard, but then in the alternative requesting that the court declare that § 976 violates the First and Tenth Amendments only with regard to Guard members on state active duty).

Plaintiffs fail to define "not activated," but they presumably refer to the Inactive National Guard. The only other category of inactive status is Guard members on the inactive list of a Reserve component, who perform inactive-duty training, *see* 10 U.S.C. § 10141 (describing the two types of inactive status as "[r]eserves who are on the inactive status list of a reserve component" and reserves "who are assigned to the inactive Army National Guard or the inactive Air National Guard"), in whom plaintiffs have expressly declaimed interest, *see* Compl. ¶ 73 ("Plaintiffs do *not* seek to enroll or represent members of the Connecticut National Guard . . . on inactive-duty training." (emphasis in original)).

Because the references to the Inactive National Guard are inconsistent, it is unclear exactly what relief plaintiffs seek with regard to members of the Inactive National Guard. For ease of argument, this brief assumes that plaintiffs seek equal relief with regard to both Connecticut Guard members on state active duty and in the Inactive National Guard.

on state active duty from . . . joining or attempting to enroll another in a labor organization." *Id.* ¶ 73. Plaintiffs alternatively argue that, if § 976 does indeed apply to Guard members on state active duty and in the Inactive National Guard, § 976 violates both the First and Tenth Amendments.

Plaintiffs bring three causes of action. First, plaintiffs bring a claim under the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, seeking a declaration that § 976 does not apply to (1) Connecticut Guard members on state active duty or in the Inactive National Guard and (2) any labor organizations or other civilian actors that organize, enroll, represent, or negotiate on behalf of Connecticut Guard members on state active duty. Second, plaintiffs claim that § 976 violates their First Amendment rights in one of two alternative ways: if § 976 does apply to Guard members on state active duty and in the Inactive National Guard, then § 976 facially violates plaintiffs' right to free speech and association; and even if § 976 does not apply to such Guard members, it still unconstitutionally chills their speech and association. Third, plaintiffs allege that if § 976 applies to Guard members on state active duty and in the Inactive National Guard, § 976 further violates the Tenth Amendment by encroaching upon Connecticut's authority over state employees.

Plaintiffs request a declaration either that § 976 does not apply to "members of the Connecticut National Guard when not activated or when serving on state active duty," or that § 976 violates the First and Tenth Amendments as applied to "members of the Connecticut National Guard on state active duty." Compl. at 19. Plaintiffs further request that the Court "enjoin application of Section 976 to any efforts of plaintiffs to enroll members of the Connecticut National Guard on state active duty in a labor organization or to negotiate or bargain on their behalf with state officials." *Id.*

## STANDARD OF REVIEW

A court must resolve all issues of subject matter jurisdiction before it proceeds to the merits of the plaintiff's claims. *See, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The plaintiff bears the burden of demonstrating subject matter jurisdiction. *See Lujan*, 504 U.S. at 561. Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotations omitted) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true, but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Id.* at 678, 681. The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requires factual allegations "plausibly suggesting," and "not merely consistent with," a valid claim for relief. *Id.* at 557. The court applies this standard both when analyzing whether the complaint alleges facts sufficient to establish subject matter jurisdiction and when analyzing whether the complaint states a valid claim for relief. *See, e.g.*, *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). However, the factual allegations in the complaint "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed. 1990)).

## ARGUMENT

**I.     This Court Lacks Jurisdiction Over Plaintiffs' First and Tenth Amendment Claims.**

"The judicial power of the United States" is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). This "case-or-controversy requirement" mandates that plaintiffs demonstrate, at the time of filing their complaint, that they have standing, *Lujan*, 504 U.S. at 560, and that their case is ripe for adjudication, *Texas v. United States*, 523 U.S. 296, 300 (1998). Here, Plaintiffs have failed to adequately plead both standing and ripeness in regards to their First and Tenth Amendment claims, and so this Court should dismiss for lack of subject matter jurisdiction.

**A.     Plaintiffs Lack Standing to Assert a First Amendment Claim Because They Lack an Injury in Fact and Because They Cannot Assert the Rights of Third-Party Guard Members.**

The demonstration of a plaintiff's standing to sue "is an essential and unchanging part of the case-or-controversy requirement." *Lujan*, 504 U.S. at 560. The standing inquiry is "especially rigorous" when a plaintiff asks the court to determine "whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). To establish standing, the plaintiff must show "(1) that the plaintiff ha[s] suffered an 'injury in fact' . . . (2) that there is 'a causal connection between the injury and the conduct' of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560–61). Plaintiffs have failed to satisfy the injury in fact requirement, and have failed to show they may bring a claim on behalf of a third party, *i.e.*, Guard members.

1.  **Plaintiffs Lack an Injury In Fact Because § 976 Does Not Proscribe Their Alleged Intended Conduct and They Fail to Assert a Credible Risk of Prosecution.**

In establish an injury in fact, Plaintiffs must have "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations and citations omitted). Plaintiffs do not allege that the Department of Justice has taken any action against them. Rather, they posit that § 976 "chills" their own speech and the speech of Guard members on state active duty and in the Inactive National Guard in violation of the First Amendment. *See, e.g.*, Compl. ¶¶ 5, 59, 71–72, 78, 90–92. In order to assert an Article III injury in a pre-enforcement challenge such as this, a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *SBA*, 573 U.S. at 151 (quoting *Babbitt*, 442 U.S. at 298); *see also Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 602 (2d Cir. 2020) (citing *SBA*).

At the motion to dismiss stage, as here, the Court itself must determine whether the plaintiff's conduct is "arguably . . . proscribed by a statute." *See SBA*, 573 U.S. at 162 (construing—rather than assuming—challenged statute to determine whether plaintiffs' conduct is "arguably proscribed"); *see, e.g.*, *Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 602–05 (2d Cir. 2020) (construing licensing statute to determine whether plaintiff's alleged intended conduct is subject to statute's constraints); *cf. Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) (assuming plaintiff's interpretation of vague statute because it was "reasonable enough that [plaintiff] may legitimately fear that it will face enforcement"). A credible threat is not established by "imaginary or speculative" fears of prosecution. *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (quoting *Babbitt*, 442 U.S. at 298). Thus, mere "[a]llegations of

10

a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Rather, "an allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quoting *SBA*, 573 U.S. at 158).

Plaintiffs do not meet this standard. Plaintiffs' alleged intended conduct is "arguably affected with a constitutional interest," *SBA*, 573 U.S. at 162 (quoting *Babbitt*, 442 U.S. at 298), to the extent that plaintiffs seek to discuss unionization with Guard members on state active duty or in the Inactive National Guard, *see Thomas v. Collins*, 323 U.S. 516, 532 (1945) ("The right thus to discuss, and inform people concerning, the advantages and disadvantages of unions and joining them is protected not only as part of free speech, but as part of free assembly."). But plaintiffs fail to show that § 976 proscribes this conduct or that this conduct invites any credible threat of prosecution. Indeed, the entire premise of plaintiffs' complaint is that § 976 "does not apply to members of the National Guard on state active duty" and thus "[p]laintiffs do *not* wish to engage in any conduct that would invite federal criminal liability" under § 976. Compl. ¶¶ 4, 8, 59 (emphasis in original). The Government agrees: § 976 does not apply to Guard members on state active duty or in the Inactive National Guard and plaintiffs invite no risk of prosecution by discussing unionization with such Guard members.

This Court must construe § 976 to determine whether "members of the armed forces" arguably includes Guard members on state active duty or in the Inactive National Guard. As plaintiffs themselves explain, § 976 defines "members of the armed forces" exclusively as: "a member of the armed forces who is serving on active duty," "a member of the National Guard who is serving on full-time National Guard duty," or "a member of a Reserve component while

performing inactive-duty training." § 976(a)(1). As discussed, Guard members on state active duty and in the Inactive National Guard do not fall into any of these three categories.

Because § 976 does not proscribe plaintiffs' alleged intended conduct, plaintiffs can show no credible threat of prosecution. "A plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). Plaintiffs' subjective fear of wrongful prosecution for lawful conduct does not bridge that gap. *See Laird*, 408 U.S. at 13–14; *see, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (holding that plaintiffs lacked standing to challenge allegedly discriminatory pattern by two judges because threat of injury to plaintiffs—*i.e.*, threat of being charged with crime and appearing before the relevant judges—veers "into the area of speculation and conjecture"); *Stagg, P.C.*, 983 F.3d at 605 (holding that plaintiff failed to show a credible threat of prosecution because none of plaintiff's alleged intended conduct was actually proscribed by the statute); *Clark v. Stone*, 998 F.3d 287, 295–96 (6th Cir. 2021) (holding that plaintiffs' "fear of being wrongfully prosecuted [for child abuse] for lawful corporeal punishment" was insufficient to show standing "because they have failed to demonstrate false prosecution with any certainty"); *White v. United States*, 601 F.3d 545, 553–54 (6th Cir. 2010) (holding that chicken breeders' fear of false prosecution under anti-cockfighting statute for lawful transportation of chickens was insufficient to show standing because the "threat of injury ... rest[s] on a string of actions the occurrence of which is merely speculative"); *Murphy v. Lamont*, No. 3:20-CV-0694 (JCH), 2020 WL 4435167, at *5 (D. Conn. Aug. 3, 2020) (slip op.), *reconsideration denied*, No. 3:20-CV-0694 (JCH), 2020 WL 8082407 (D. Conn. Oct. 15, 2020) (holding that plaintiff lacked injury in fact where he could not "show that the conduct he wishe[d] to engage [wa]s 'proscribed by statute'" (quoting *SBA*, 573 U.S. at 159)).

12

Plaintiffs rely on a string of speculative occurrences to support their theory of injury. To start, plaintiffs assume that they will have imminent opportunity to follow through on their alleged intent to unionize Guard members on state active duty or in the Inactive National Guard. But plaintiffs fail to articulate any concrete plan to do so. *See Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent injury' that our cases require."); *see, e.g.*, *Am. Charities for Reasonable Fundraising Regul., Inc. v. Shiffrin*, 205 F.3d 1321 (2d Cir. 2000) (unpublished table decision) (holding plaintiffs' "plans to engage in charitable solicitation in Connecticut" insufficient because plaintiffs failed to "allege[] any specificities" about a fundraising plan beyond a list of potential donors); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (holding insufficient plaintiffs' intent to refuse to rent to unmarried couples in the future because plaintiffs could not "specify when, to whom, where, or under what circumstances"); *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (holding insufficient plaintiffs' declared intention to hold closed primaries because plaintiff "ha[d] taken no steps to authorize the party to conduct closed primaries"). Plaintiffs allege only a general "wish to enroll members of the Connecticut National Guard on state active duty in a labor organization and to represent them in that status." Compl. ¶¶ 74. Yet plaintiffs do not provide any details about when this conduct will occur, nor do they identify any specific current or future state active duty order under which there are Guard members with whom they seek to discuss unionizing. Plaintiffs' alleged plan amounts to hypothetical "some day intentions" that do not meet the imminence requirements. *Lujan*, 504 U.S. at 564 (quotations omitted).

Next, even assuming plaintiffs are provided a specific opportunity to follow through on their hypothetical plan at some point in the future, plaintiffs further speculate that the Government will wrongfully prosecute them for this lawful conduct. Plaintiffs do not explain how their communications about unionizing Guard members in state active duty and in the Inactive National Guard would be subject to prosecution as attempt to unionize Guard members on active duty, full-time National Guard duty, or inactive-duty training. Nor have plaintiffs identified any "past history of enforcement," either actual or threatened, with respect to their conduct. *See SBA*, 573 U.S. at 164 ("We have observed that past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." (quotations and citations omitted)); *Clapper*, 568 U.S. 398, 411 (2013) (noting that failure to offer evidence of allegedly chilling government conduct—specifically, monitoring of plaintiffs' communications—"substantially undermines [plaintiffs'] standing theory"); *cf. Knife Rights, Inc.*, 802 F.3d at 384–86 (holding that plaintiffs' fear of future prosecution was valid given that defendant had recently pursued enforcement action against it). Indeed, plaintiffs cannot point to a single instance in which the government charged or threatened to charge such conduct against *any* individual or entity based on the conduct plaintiffs wish to undertake. "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt*, 442 U.S. at 298–99 (quoting *Younger*, 401 U.S. at 42).

Plaintiffs therefore seek a declaration that § 976 does not proscribe conduct that § 976 by its own terms does not proscribe and has never been interpreted to proscribe. In doing so, plaintiffs ask this Court to violate Article III's proscription against issuing advisory opinions. *See Carney v. Adams*, 141 S. Ct. 493, 498 (2020) ("We have long understood that constitutional phrase to

require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions."); *F.X. Maltz, Ltd. v. Morgenthau*, 556 F.2d 123, 126 (2d Cir. 1977) (refusing to issue "advisory opinion" where policemens' "apprehension that [they] may be exposed to liability" was insufficient to confer standing because none had actually been sued or threatened with suit).

> **2.  Plaintiffs Lack Third-Party Standing to Assert the Rights of Guard Members on State Active Duty and in the Inactive National Guard Because They Do Not Allege a Close Relationship with Such Guard Members, or a Barrier to Such Guard Members' Ability to Assert Their Own Rights, or Any Injury to Themselves.**

Plaintiffs have no standing to bring any claim based on the First Amendment rights of National Guard members on state active duty or in the Inactive National Guard, to the extent they seek to do so. *See, e.g.*, Compl. ¶¶ 5, 59, 71, 92 (discussing alleged chilling effect on Guard members on state active duty). A plaintiff generally may not "assert[] the rights or legal interests of others [simply] to obtain relief from injury to themselves." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 40 (2d Cir. 2015) (quoting *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014)). Courts allow exception to this prudential third-party standing bar when "a plaintiff can show '(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests.'" *Poole*, 922 F.3d at 75 (quoting *Keepers, Inc.*, 807 F.3d at 41); *see generally Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004).

Plaintiffs have failed to show they meet either prong of this test. Plaintiffs do not plead any close relationship with Guard members on state active duty or in the Inactive National Guard. *Cf. W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109–10 (2d Cir. 2008) (noting that courts "have permitted "[t]rustees [to] bring suits to benefit their trusts; guardians ad litem [to] bring suits to benefit their wards; receivers [to] bring suit to benefit their

receiverships; assignees in bankruptcy [to] bring suit to benefit bankrupt estates; [and] executors [to] bring suit to benefit testator estates" (alterations in original) (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287–88 (2008))).  Indeed, the entire premise of plaintiffs' complaint is that they have no existing relationship with such Guard members.  Nor have plaintiffs shown that such Guard members are hindered in asserting their own rights.

This case bears no resemblance to the rare cases in which the Supreme Court has allowed a further exception "when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights."  *Warth*, 422 U.S. at 510.  In each of those cases, the plaintiffs themselves were either at risk of prosecution or had already been sued.  *See Doe v. Bolton*, 410 U.S. 179, 188 (1973) (holding that physicians consulted by pregnant women had standing to challenge abortion statute because "[t]he physician is the one against whom these criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions"); *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965) (holding that physicians who gave medical advice to married couples had standing to challenge abortion statute because they were at risk of criminal conviction for doing so); *Barrows v. Jackson*, 346 U.S. 249 (1953) (holding that party to restrictive covenant against sale of realty to non-Caucasians had standing to challenge covenant because she had been sued for damages for violating it).

Here, in contrast, plaintiffs have failed to establish injury to themselves.  The third-party standing rule does not allow a plaintiff to bypass the minimum constitutional requirements of standing.  *See Kowalski v. Tesmer*, 543 U.S. at 129 & n.2; *United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019) ("The overbreadth doctrine . . . 'does not provide a reason to find such injury where none is present or imminently threatened in the first instance.'" (quoting *Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013)).  As discussed, § 976 imposes no prohibitions against plaintiffs'

alleged intended conduct and creates no objective chilling effect. Plaintiffs have thus failed to establish that they may assert third-party standing on behalf of Guard members on state active duty or in the Inactive National Guard.

**B.      Plaintiffs Lack Standing to Assert a Tenth Amendment Claim Because They Lack an Injury in Fact.**

Plaintiffs allege that § 976 violates the Tenth Amendment by encroaching on Connecticut's authority over state employees. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Const. amend X. An individual challenging federal action under the Tenth Amendment may only do so if he meets the constitutional requirements for standing. As the Supreme Court explained in *Bond v. United States*:

> If, in connection with the [Tenth Amendment] claim being asserted, a litigant who commences suit fails to show actual or imminent harm that is concrete and particular, fairly traceable to the conduct complained of, and likely to be redressed by a favorable decision, the Federal Judiciary cannot hear the claim. These requirements must be satisfied before an individual may assert a constitutional claim; and in some instances, the result may be that a State is the only entity capable of demonstrating the requisite injury.

564 U.S. 211, 225 (2011) (citing *Lujan*, 504 U.S. at 560–61); *see also Allen v. Wright*, 468 U.S. 737, 755 (1984) (explaining that individuals have "no standing to complain simply that their Government is violating the law").

Plaintiffs' Tenth Amendment claim is predicated on the alternate theory that § 976 applies to Guard members on state active duty and in the Inactive National Guard. Because § 976 does not apply to such Guard members, plaintiffs have failed to establish an injury.

And even to the extent that plaintiffs' injury rests on fear of wrongful prosecution for lawful conduct, plaintiffs have failed to show any credible threat of prosecution, as discussed. Indeed, plaintiffs' lack of injury is even more pronounced in the Tenth Amendment context than in the

First Amendment context given plaintiffs' reliance on § 976's alleged chilling effect. Even if the Court were to accept plaintiffs' chilling argument, this doctrine does not apply outside the limited context of the First Amendment. *See Ollie v. Univ. of Conn.*, 364 F. Supp. 3d 143, 150–51 (D. Conn. 2019) (collecting cases); *see, e.g.*, *United States v. Chester*, 628 F.3d 673, 688 (4th Cir. 2010) (concluding that to import this "'extraordinary' exception . . . into the Second Amendment would be inappropriate" because the "chilling effect" doctrine "is the Court's solution to [a] speech-specific problem"). As such, plaintiffs have failed to show that they have standing to assert a Tenth Amendment claim.

**C.    Plaintiffs' First and Tenth Amendment Claims Are Unripe Because Plaintiffs Cannot Show That the Alleged Harm Will Ever Occur.**

A plaintiff in federal court also must show that its claim is ripe. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Ripeness incorporates both a constitutional requirement and a prudential requirement. *See Simmonds*, 326 F.3d at 356–57. Plaintiffs fail under both ripeness doctrines.

Constitutional ripeness overlaps with the injury in fact requirement of standing. *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 ("Constitutional ripeness . . . is really just about the first *Lujan* factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" (quoting *Lujan*, 504 U.S. at 560)). "It prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds*, 326 F.3d at 357. As discussed, plaintiffs have failed to establish an injury

in fact because they allege only an abstract, subjective fear of chilling and an equally speculative fear of wrongful prosecution.

Plaintiffs also fail to establish prudential ripeness. Prudential ripeness allows courts to "avoid becoming embroiled in adjudications that may later turn out to be unnecessary." *Id*. The prudential ripeness test considers: "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." *Id*. at 359 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). Plaintiffs' suit is not fit for judicial decision because "the issues sought to be adjudicated are contingent on future events or may never occur." *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989). As discussed, plaintiffs have failed to pinpoint any present or future Connecticut state active duty order under which there are Guard members with whom plaintiffs seek to discuss unionization. It is unclear when such an opportunity may arise again. Even if such opportunity were to arise, it is unlikely that plaintiffs would be wrongfully prosecuted for their lawful conduct. *See, e.g.*, *Simmonds*, 326 F.3d at 359 (holding plaintiff's suit was not fit for judicial decision where "uncertainty . . . exists . . . over 'whether or when' [plaintiff] will be detained by the INS and the removal order against him executed" (quoting *Texas*, 523 U.S. at 300). Nor will plaintiffs endure hardship if decision is withheld, because "[t]he mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Id*. at 360. Section 976 imposes no prohibitions on plaintiffs' alleged desired conduct. Plaintiffs' "abstract, subjective fear that [their] rights are chilled" do not suffice to establish harm, *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 689, given that plaintiffs fail to allege that a prosecution is even "remotely possible.'" *Babbitt*, 442 U.S. at 298–99 (quoting *Younger*, 401 U.S. at 42). For these reasons, plaintiffs have failed to show that their First and Tenth Amendment claims are ripe.

II.     **Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted.**

If this Court does not dismiss plaintiffs' claims for lack of jurisdiction, it should nonetheless dismiss the claims for failure to state a claim upon which relief can be granted.

### A.  Plaintiffs' DJA Claim Fails to State a Claim Because the DJA Does Not Create a Cause of Action.

Plaintiffs' first claim is premised exclusively on the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201.  But "[t]he DJA is procedural only, and does not create an independent cause of action."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (quotation and citations omitted).  The DJA allows district courts merely to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  Because the DJA cannot independently support a cause of action, plaintiffs' first claim for relief under the DJA must be dismissed for failure to state a claim.  To the extent that plaintiffs seek a declaratory judgment, they theoretically may do so as a form of relief.  However, they have otherwise failed to plead or identify a cause of action that allows them to bring any of their claims in this case. The DJA itself not does supply that cause of action.

### B.  Plaintiffs' First Amendment Claim Fails to State a Claim Because § 976 Does Not Apply to Plaintiffs' Alleged Intended Conduct.

Plaintiffs' First Amendment claim has two alternate theories, both of which fail to state a claim.  First, plaintiffs allege that if § 976 applies to Guard members on state active duty or in the Inactive National Guard, § 976 facially violates plaintiffs' First Amendment rights to free speech and association and is overbroad.  This argument necessarily fails because § 976, on its face, does not regulate Guard members on state active duty or in the Inactive National Guard.

Second, plaintiffs allege that even if § 976 does not apply to Guard members on state active duty or in the Inactive National Guard, § 976 still unconstitutionally chills plaintiffs' First

Amendments rights to free speech and association.  For the same reasons as discussed above, this argument also fails.  To sustain a First Amendment "chilling" claim, a plaintiff must show that the statute "had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird*, 408 U.S. at 11, 13–14 (holding that "[a]llegations of a subjective 'chill'" are insufficient to establish a First Amendment claim).  Because § 976 by its own terms does not apply to plaintiffs' alleged intended conduct, and because plaintiffs have failed to allege any risk of wrongful prosecution under § 976, plaintiffs have failed to state a First Amendment claim.  *See, e.g.*, *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (holding that plaintiff failed to state a First Amendment chilling claim because the relevant government action—a preliminary injunction and a temporary restraining order—did not apply to plaintiff and explicitly avoided infringing on First Amendment rights, respectively).

### C. Plaintiffs' Tenth Amendment Claim Similarly Fails to State a Claim Because § 976 Does Not Apply to Plaintiffs' Alleged Intended Conduct.

Plaintiffs' Tenth Amendment fails for the same reasons.  This claim is expressly premised on the theory that § 976 applies to Guard members on state active duty and in the Inactive National Guard.  Because § 976 does not so apply, this claim necessarily fails.  Accordingly, this Court should dismiss all three of plaintiffs' claims for failure to state a claim.

## CONCLUSION

For the aforementioned reasons, this Court should dismiss the Complaint with prejudice for lack of jurisdiction and failure to state a claim.

Dated January 20, 2022

         Respectfully submitted,

         BRIAN M. BOYNTON
         Acting Assistant Attorney General

         ANTHONY J. COPPOLINO
         Deputy Director

/s/ Cassie Snyder
CASSIE SNYDER (DC Bar # 1671667)
Trial Attorney
U. S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St., N.W.
Washington, D.C. 20005
Phone: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov
Fax:    (202) 616-8460
*Counsel for Defendants*